UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

State of Washington Health Care Authority

                    Plaintiff,

        v.

Alex M Azar, II, et al.,,

                    Defendants.

Case No. 3:19-cv-06137-BHS-TLF

REPORT AND
RECOMMENDATION

Noted for August 14, 2020

This matter comes before the Court on a motion to dismiss by defendants Azar, Centers for Medicare and Medicaid Services (CMS), and Verma (collectively the "Federal Defendants") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Dkt. 23. For the reasons set forth below, the Court should GRANT the Federal Defendants' motion under FRCP 12(b)(1) based on lack of subject matter jurisdiction.

Plaintiff, the Washington State Health Care Authority (HCA), asserts this cause of action under 28 U.S.C. § 2201, the Declaratory Judgment Act, seeking relief for alleged violations of the Administrative Procedures Act, and the federal statutes and regulations under which the United States Department of Health and Human Services, Center for Medicare and Medicaid Services, administers a program for incentive payments (for implementing electronic medical records systems) to the Washington State Health Care Authority – funds that are distributed by HCA to local hospitals and medical providers, including the Hospital Defendants -- specifically: 42 U.S.C. § 1396b(t)(5)(c), 42 U.S.C. §

1396b(d)(2)(A), 42 U.S.C. § 1396b(d)(2)(C); 42 C.F.R. § 310(g)(2)(i). Dkt. 1, complaint, at 6-7, 14-15. Plaintiff alleges that the Federal Defendants have sought reimbursement of $11,689,882.00 by sending a demand letter to plaintiff dated March 21, 2017, regarding the Washington State HCA's 2011-2014 distribution of federal funds to the Hospital Defendants. Dkt. 1 at ¶¶ 30, 44.

The complaint also alleges that the Federal Defendants threatened to proceed with a disallowance action against plaintiff if plaintiff did not respond to the demand letter in a timely manner. *Id*. at ¶ 30.

Plaintiff asks the Court to declare whether CMS has violated the Administrative Procedures Act by using sub regulatory guidance (a preamble to the final rule, and a "frequently asked questions" segment of a website) instead of deploying the notice-and-comment rule-making process. Dkt 1 at 15. Plaintiff also seeks a declaration of the law concerning the methodology for calculating the payment amount, i.e., whether the Federal Defendants' interpretation of one of the elements of the calculation of the Medicaid share (by which the payment amounts to the State HCA, and to the Hospital Defendants are derived) is legally sound and subject to deference by the Court – separating the number of in-patient *paid* bed-days from the number of in-patient *unpaid* bed-days, and only including the number of paid bed-days while excluding the number of unpaid bed-days. Dkt. 1 at 15.

The Federal Defendants acknowledge that the CMS sent plaintiff a demand letter informing HCA that CMS expects repayment of $11,689,882, indicating that the Federal Defendants "may proceed" with a disallowance action. Dkt. 23 at 12; Dkt. 24 at Ex. B.

1    In their response, the "Hospital Defendants" (i.e., defendants Kadlec Regional

2    Medical Center, King County Public Hospital District No. 2, Providence Centralia

3    Hospital, Providence Holy Family Hospital, Providence Mount Carmel Hospital,

4    Providence Regional Medical Center Everett, Providence Sacred Heart Medical Center,

5    Providence St. Mary Medical Center, Providence St. Peter Hospital, Snohomish County

6    Public Hospital District No. 1, Swedish Medical Center Cherry Hill, Swedish Medical

7    Center Edmonds, Swedish Medical Center First Hill/Ballard, and Swedish Medical

8    Center Issaquah) request that if the Court grants the Federal Defendants' motion, the

9    Court should also dismiss plaintiff's claims against the Hospital Defendants. Dkt. 32.

10                    I.    <u>FACTUAL BACKGROUND</u>

11    Plaintiff brought this action under 28 U.S.C. § 2201, the Declaratory Judgment

12    Act. Dkt. 1 at ¶ 1. Plaintiff asks this Court to exercise federal question jurisdiction and

13    resolve a dispute regarding the interpretation of a federal statute. *Id*. at ¶¶ 1, 48-55.

14    Plaintiff's complaint explains that the State administers the federal Medicaid

15    program and must do so in compliance with the Social Security Act and regulations

16    promulgated by the United States Centers for Medicare and Medicaid Services (CMS).

17    Dkt. 1 at ¶ 2. Plaintiff alleges that it administered a financial incentive program designed

18    to promote the use of electronic health records systems; under this program, the federal

19    government and the Washington State Health Care Authority have a formally-approved

20    plan under which the federal agency CMS provides incentive funding and the State

21    HCA makes the incentive payments to qualifying hospitals and medical providers. Dkt. 1

22    at ¶¶ 3, 17-18, 20.

23

24

25

Plaintiff adds that Congress enacted a formula for calculating these incentive payments based on "a hospital's 'Medicaid share,' which is the percentage of a hospital's overall "inpatient bed-days" attributable to Medicaid patients." *Id.* at ¶ 4. The complaint elaborates on the formula, explaining that it accounts for each hospital's volume of patients, and consists of two main components – first, the overall electronic health record amount; and second, the Medicaid share. Dkt. 1 at ¶ 21.

In addition, the complaint elaborates on the Medicaid share. Medicaid share is a fraction expressed as:

Estimated Medicaid inpatient bed-days plus estimated Medicaid managed care inpatient-bed-days […]

Divided by

Estimated total inpatient bed days multiplied by ((estimated total charges minus charity care charges) divided by estimated total charges)."

Dkt. 1 at ¶ 22. Plaintiff further explains this Medicaid share is then multiplied by the overall electronic health record amount. *Id.*

Plaintiff states that in order to qualify for the incentive program, each state was required to submit a State Medicaid Health Information Technology Plan (hereinafter referred to as the Plan) to the Centers for Medicare and Medicaid Services. Dkt. 1 at ¶ 23. And, plaintiff asserts that in 2011, the Center for Medicare and Medicaid Services approved Washington's State Medicaid Health Information Technology Plan. *Id.* at ¶ 24. Between 2011 and 2014, plaintiff asserts, it paid the Hospital Defendants the electronic health record incentives; the payment amount was accounted for in a manner where the State included "unpaid bed-days in the Medicaid-bed-days-only portion of the Medicaid share." *Id.* at ¶ 26.

Plaintiff asserts that when the Washington State HCA began administering its Plan, it relied on data sources that did not parse out the number of in-patient *paid* bed-days from the number of in-patient *unpaid* bed-days. *Id.* at ¶ 6. The reason for not separating the paid from unpaid bed-days was that the State HCA understood "neither the Social Security Act nor CMS's regulations expressly excluded unpaid bed-days from the Medicaid share calculation. . . ." *Id* at ¶¶ 6, 33. In addition, the complaint notes: In a preamble to the final regulation -- and as part of the frequently asked questions portion of the CMS website -- CMS provided guidance that calculation of Medicaid bed-days should not include the unpaid Medicaid bed-days. *Id.,* at ¶ 36.

The complaint states that the United States Office of the Inspector General conducted audits of states participating in the electronic health records incentive program. *Id.* at ¶ 27. The complaint notes the Office of the Inspector General determined that many states, including Washington State HCA, made incorrect incentive payments by including unpaid Medicaid bed-days in the Medicaid bed-days portion of the Medicaid share. *Id.* at ¶ 27.

According to plaintiff, the Office of Inspector General recommended that plaintiff refund the overpayment to the federal government, adjust the remaining incentive payments, review payment calculations for hospitals not included in the audit and review supporting documents for all hospitals. Dkt. 1 at ¶ 28. Plaintiff contends that the federal CMS sent a demand letter dated March 21, 2017, for payment from the Washington State HCA for the alleged overpayment to the hospitals, threatening a disallowance action if the State did not respond in a timely manner. *Id.* at ¶ 30.

1    Plaintiff asserts that it hired an independent accounting firm to audit the incentive

2  payments made to all the hospitals, including the Hospital Defendants. *Id.* at ¶ 29.

3  Plaintiff maintains that the audit was conducted in accordance with the federal guidance

4  that unpaid bed-days should be excluded from the payment calculation. *Id.* The

5  complaint states that in 2018 plaintiff sent preliminary notices of overpayment to the

6  Hospital Defendants and that plaintiff sent final notices in 2019. *Id.* at ¶ 31.

7    The complaint explains that the Hospital Defendants subsequently filed notices

8  requesting an administrative hearing contesting the overpayment findings. *Id.* at ¶ 32.

9  According to the complaint, the Hospital Defendants contend that the federal CMS, the

10  United States Office of the Inspector General, and plaintiff, "did not correctly interpret

11  and apply federal law in concluding that they were overpaid." *Id.* The complaint also

12  states that the Hospital Defendants, "contend that the notices are not supported by legal

13  authority for collecting the overpayment." *Id.*

14    Plaintiff explains that it is seeking declaratory judgment to determine the meaning

15  of 42 U.S.C. § 1396b(t)(5)(c). *Id.* at ¶ 37.  The plaintiff asks the Court to decide whether

16  42 U.S.C. § 1396b(t)(5)(c) requires the exclusion of unpaid bed-days from the

17  calculations of the Medicaid share and whether the Federal Defendants violated the

18  Administrative Procedures Act. Dkt. 1 at ¶¶ 48-55.

19                II.      DISCUSSION

20    A.  Standard of Review

21    Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) address

22  the Court's subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598

23  F.3d 1115, 1122 (9th Cir. 2010). The party asserting the subject matter jurisdiction of

24

25

1    the federal court has the burden of establishing subject matter jurisdiction. *See,*

2    *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994); *Chandler,* at 1122.

3    Sovereign immunity is a jurisdictional issue that may be raised in a motion under FRCP

4    12(b)(1). *Daniel v. National Park Service,* 891 F.3d 792, 765-66 (9th Cir. 2018).

5              a.   Federal Rule of Civil Procedure 12(b)(1)

6          A Rule 12(b)(1) motion to dismiss may be based on either a "factual" or a "facial"

7    challenge to subject matter jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d

8    1035, 1039 (9th Cir. 2004). A facial challenge on subject matter jurisdiction asserts that

9    the factual allegations in the complaint are insufficient on their face to invoke federal

10   jurisdiction. *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016) (citing *Safe Air*

11   *for Everyone*, 373 F.3d at 1039). The district court resolves facial challenges to subject

12   matter jurisdiction under the same standard as Rule 12(b)(6); accepting the allegations

13   as true and drawing all reasonable inferences in plaintiff's favor, the court must

14   determine whether the allegations sufficiently invoke the court's jurisdiction. *Leite v.*

15   *Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). But the Court is not required to accept

16   as true plaintiff's allegations asserting proper subject matter jurisdiction. *Robinson v.*

17   *United States*, 586 F.3d 683, 685 (9th Cir. 2009).

18         A factual challenge, on the other hand, "disputes the truth of the allegations that,

19   by themselves, would otherwise invoke federal jurisdiction." *Edison*, 822 F3d at 517

20   (quoting *Safe Air for Everyone,* 373 F.3d at 1039). When a defendant raises a factual

21   attack on jurisdiction, the plaintiff must support their jurisdictional allegations with

22   "competent proof." *Leite*, 749 F.3d at 1122. The Court "need not presume the

23   truthfulness of the plaintiff's allegations" when considering a factual attack on

24

25

1  jurisdiction. *Edison*, 822 F.3d at 517. Further, the Court may consider the parties

2  evidence without converting the motion to dismiss into one for summary judgment. *Id.*

3           b.  Federal Rule of Civil Procedure 12(b)(6)

4           Because the Court should decide this case on the basis of subject matter

5  jurisdiction, the Court does not need to reach the merits under FRCP 12(b)(6). If the

6  Court chooses to review the merits, under Rule 12(b)(6), the Court must accept as true

7  "all well-pleaded allegations of fact in the complaint and construe them in the light most

8  favorable to the non-moving party." *Cedar Point Nursery v. Shiroma*, 923 F.3d 524, 530

9  (9th Cir. 2019) (internal quotations omitted). The court is not required to accept legal

10  conclusions couched as factual allegations. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

11           To survive a 12(b)(6) motion, a complaint must contain sufficient factual matter to

12  "state a claim to relief that is plausible in its face." *Ashcroft*, 556 U.S. at 678 (quoting

13  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). A claim is plausible on its face if

14  the pleaded facts allow the court to draw the reasonable inference that the defendant is

15  liable for the misconduct alleged. *Ashcroft,* 556 U.S. at 678. When evaluating an FRCP

16  12(b)(6) motion, the court may only consider the complaint, materials incorporated into

17  the complaint by reference, and matters of which the court may take judicial notice.

18  *Cedar Point Nursery*, 923 F.3d at 530; *Khoja v. Orexigen Therapeutics, Inc.,* 899 F.3d

19  988, 998-99, 1002-03 (9th Cir. 2018). The Court does not resolve factual disputes at the

20  pleading stage. *Khoja,* at 1003.

21        B.  Motion to Strike

22           In support of the motion to dismiss, the Federal Defendants submitted a reply

23  brief and the Declaration of Janet Freeman with an attached exhibit. Dkt. 35, 36, 36-1.

24

25

REPORT AND RECOMMENDATION - 8

1    Pursuant to Local Rule 7(g), plaintiff filed a surreply requesting that the Court strike the

2    Declaration of Janet Freeman and the attached exhibit. Dkt. 38.

3         Plaintiff argues that the declaration and exhibit are improper, because the

4    Federal Defendants' motion is a facial challenge to subject matter jurisdiction, not a

5    factual challenge. Dkt. 38. Plaintiff also contends that the declaration and exhibit should

6    be stricken because they improperly introduce new evidence in a reply brief. *Id.*

7         When new evidence is presented in a reply brief, the court should not consider

8    the new evidence without giving the non-movant the opportunity to respond. *Provenz v.*

9    *Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996). However, evidence if not "new" if it is

10   submitted in direct response to proof or evidence presented in an opposition to a

11   motion. *Rayon-Terrell v. Contra Costa County*, 232 Fed. Appx. 626, 629 n. 2 (9th Cir.

12   2007).

13        The Federal Defendants submitted the Declaration of Janet Freeman in response

14   to plaintiff's arguments that the state has suffered injury from incurring cost to audit the

15   payments made to hospitals and in defending against the Hospital Defendants' claims in

16   an administrative proceeding. Accordingly, because the declaration was in direct

17   response to the set of facts plaintiff raised in the response brief, the undersigned

18   recommends that the Court find that the Declaration of Janet Freeman and the attached

19   exhibit are not "new" evidence. *Rayon-Terrell*, 232 Fed. Appx. at 629 n.2, *In re ConAgra*

20   *Foods, Inc.*, 90 F. Supp. 3d 919, 955 (C.D. Cal. 2015).

21        For this reason, the undersigned recommends that the Court should not strike

22   the Declaration of Janet Freeman and attached exhibit. Dkt. 36, 36-1.

23

24

25

REPORT AND RECOMMENDATION - 9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C.  <u>Federal Defendants' Motion Under FRCP 12(b)(1)</u>

   a.  **<u>Standing</u>**

The Federal Defendants contend that this action presents non-justiciable claims because plaintiff lacks standing. Dkt. 23 at 21. Plaintiff contends they have sufficiently pled standing.

The Federal Defendants contend that plaintiff lacks standing to bring this action because the Federal Defendants have not issued a notice of disallowance and plaintiff has not refunded the purported overpayment to the Federal Defendants. *Id.* at 22. Based on this, the Federal Defendants contend that plaintiff has not alleged sufficient injury to establish Article III standing. *Id.*

   i.  <u>Constitutional Requirements</u>

Before considering plaintiff's claims, the Court must determine whether plaintiff has standing to bring the claims alleged. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The Article III standing requirement prevents the courts from issuing advisory opinions "not founded upon the facts of a controversy between truly adverse parties." *Safer Chems*. v. United States, 943 F3d 397, 410 (9th Cir. 2019) (quoting *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 654 (9th Cir. 2002)).

To establish standing, a plaintiff must demonstrate that he or she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Safer Chems.*, 943 F.3d at 411 (quoting *Spokeo, Inc., v. Robins*, 136 S. Ct. 1540, 1547 (1992)).

REPORT AND RECOMMENDATION - 10

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (internal quotation omitted). Plaintiff must also establish that there is a sufficient causal connection between the injury and conduct complained of, that the injury is "fairly trace[able] to the challenged action of the defendant, and not … the result [of] the independent action of some third party not before the Court." *Lujan*, 504 U.S. at 560. The Ninth Circuit has also acknowledged that intangible harms and the risk of real harm can be sufficiently concrete to establish an injury in fact. *Safer Chems.*, 943 F.3d at 411 (citing *Bassett v. ABM Parking Servs., Inc.*, 883 F.3d 776, 779 (9th Cir. 2018)).

A program that is authorized by legislation allocating federal funds to the state governments, in exchange for the state's agreement to accept that they will be required to meet certain conditions, is analogous to a contract between the states and Congress. *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 17 (1981); *City of Los Angeles v. Barr,* 929 F.3d 1163, 1174 (9th Cir. 2019).

Plaintiff is alleging that the Federal Defendants are demanding a refund of federal funds that have already been awarded to plaintiff and threatening administrative action if plaintiff does not comply. Because the statutory framework for this Plan is similar to a contract, threat of enforcement is a serious matter. *See, State ex rel. Bacerra v. Sessions,* 284 F. Supp. 3d 1015, 1027-1029 (N.D. Cal. 2018) (threat by the federal government that if California's state government did not comply with certain requirements, the State would suffer a loss of promised federal funds that had previously been paid year-after-year is sufficient to demonstrate Article III injury-in-fact

1  for standing). The threatened loss of funds promised under federal regulations is

2  sufficient to allege an injury in fact. *See*, *City & Cty. of San Francisco v. Trump*, 897

3  F.3d 1225, 1235 (9th Cir. 2018) (*citing Organized Vill. Of Kake v. U.S. Dep't of Agric.*,

4  795 F.3d 956, 965 (9th Cir. 2015)).

5      On the other hand, Federal Defendants argue that plaintiff lacks standing

6  because plaintiff has not returned the overpayment and the Federal Defendants have

7  not issued a disallowance. The possibility of non-enforcement does not strip the plaintiff

8  of standing, because where a plaintiff has been threatened with enforcement by which

9  plaintiff is forced to change their policies or face serious repercussions from the

10  government, the plaintiff has sufficient standing. *See, City & Cty. of San Francisco*, 897

11  F.3d at 1236. To establish standing, a plaintiff is required to show only slight injury. *City*

12  *of Los Angeles v. Barr,* 929 F.3d 1163, 1174 (9th Cir. 2019).

13      Therefore, Plaintiff's complaint sufficiently alleges they have suffered an injury in

14  fact, and the purported injury in fact is fairly traceable to the Federal Defendants.

15  Plaintiff contends the alleged injury stems from the Federal Defendants' threatened

16  disallowance action, and a favorable decision would redress the alleged injury by

17  providing budgetary clarity regarding plaintiff's entitlement to federal funds.

18      **b.  Ripeness**

19      Federal Defendants contend that this action presents non-justiciable claims

20  because they are not ripe. Dkt. 23 at 21. Plaintiff disagrees. Dkt. 31. at 19. The Federal

21  Defendants contend that plaintiff is seeking an advisory opinion, because the Federal

22  Defendants have not issued a disallowance and have not initiated any adverse

23  proceeding or action against plaintiff. Dkt. 23 at 21. Therefore, the Federal Defendants

24

25

1    contend that this action presents a purely hypothetical case that is not ripe for judicial

2    determination. *Id.*

3          The Court should hold this action is ripe for review given the Federal Defendants

4    imminent threat to initiate formal disallowance. The constitutional ripeness requirement

5    and standing requirement are similar and often treated under the same rubric. *Thomas*

6    *v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1138 (9th Cir. 2000).

7          Ripeness is a question of timing. *Thomas v. Union Carbide Agric. Prods. Co.*,

8    473 U.S. 568, 579 (1985).  The ripeness requirement is "designed to prevent the courts,

9    through avoidance of premature adjudication, from entangling themselves in abstract

10   disagreements." *Thomas v. Anchorage Equal Rights Com'n*, at 1138 (internal

11   quotations omitted). The Ninth Circuit recognizes constitutional and prudential

12   components when analyzing claims for ripeness. *Safer Chems*. v. United States, 943

13   F3d 397, 411 (9th Cir. 2019).

14         A case satisfies the constitutional ripeness requirement when it presents issues

15   that are definite and concrete, not hypothetical or speculative. *Safer Chems*., 943 F.3d

16   at 411. "The Constitution mandates that prior to our exercise of jurisdiction there exist a

17   constitutional case or controversy, that the issues presented are definite and concrete,

18   not hypothetical or abstract." *Thomas*, 220 F.3d at 1139 (internal quotations omitted). In

19   the context of a claim where the plaintiff seeks declaratory judgment, the Court

20   considers "'whether the facts alleged, under all the circumstances, show that there is a

21   substantial controversy, between parties having adverse legal interests, of sufficient

22   immediacy and reality to warrant the issuance of a declaratory judgment.'" *United States*

23

24

25

1    *v. Braren,* 338 F.3d 971, 975 (9th Cir. 2003) (quoting *Md. Cas. Co. v. Pac. Coal & Oil*

2    *Co.,* 312 U.S. 270, 273 (1941)).

3         Like standing, the Court's ripeness analysis must consider whether the plaintiff

4    faces a realistic danger of direct injury resulting from the alleged conduct or whether the

5    alleged injury is too speculative to support jurisdiction. *Id.*; *See Clark v. City of Seattle*,

6    899 F.3d 802 (9th Cir. 2018). For the Court to have jurisdiction over a pre-enforcement

7    challenge to the application of a statute or regulation, there must be a genuine threat of

8    "imminent prosecution." *Safer Chems.*, 943 F.3d at 414. An injury is imminent "if the

9    threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will

10   occur." *Susan B. Anthony List v. Driehaus,* 573 U.S. 149, 158 (2014) (internal citation

11   omitted). The Ninth Circuit has  evaluated the facts under three criteria to determine

12   whether a genuine threat exists: "(1) Whether the plaintiff has articulated a concrete

13   plan to violate the law in question; (2) whether the prosecuting authorities have

14   communicated a specific warning or threat to initiate proceedings; and (3) the history of

15   past prosecution or enforcement under the challenged statute." *Safer Chems.,* at 414

16   (internal citations omitted).

17        Here, plaintiff alleges that the Federal Defendants have sent plaintiff a demand

18   letter informing plaintiff that the Washington State HCA must reimburse $11,689,882.00

19   for alleged overpayments from the Federal Defendants. Dkt. 1 at ¶¶ 30, 44. The

20   complaint also alleges that the Federal Defendants threatened to proceed with a

21   disallowance action against plaintiff if plaintiff did not respond in a timely manner. *Id.* at ¶

22   30. The Federal Defendants acknowledge that the CMS sent plaintiff a demand letter

23

24

25

1  demanding the repayment of $11,689,882, indicating that the Federal Defendants "may

2  proceed" with a disallowance action. Dkt. 23 at 12; Dkt. 24 at Ex. B.

3        For these reasons: The plaintiff's previous distribution of funds to the Hospital

4  Defendants under the Plan using a calculation that allegedly violated federal statutes,

5  regulations, and regulatory guidance; a demand letter that threatened loss of federal

6  funding; the imminent threat of enforcement backed by an OIG investigation; and the

7  ongoing budgetary uncertainty; are sufficient to meet the Constitutional ripeness

8  requirements.

9                          i.   Prudential Considerations

10        Prudential considerations of ripeness are discretionary. *Thomas v. Anchorage

11  Equal Rights Com'n*, 220 F.3d 1134, 1142 (9th Cir. 2000).

12        The Court's evaluation of prudential ripeness is guided by two considerations:

13  "the fitness of the issues for judicial decision and the hardship to the parties of

14  withholding court consideration." *Id.* at 1141.

15        A claim against agency action is fit for issuance of judicial decision when the

16  issues raised are "primarily legal, do not require further factual development, and the

17  challenged action is final." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir.

18  2009). The Court considers whether "the administrative action is a definitive statement

19  of an agency's position; whether the action has a direct and immediate effect on the

20  complaining parties; whether the action has the status of law; and whether the action

21  requires immediate compliance with its terms." *Stormans*, 586 F.3d at 1126 (quoting

22  *Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770, 780 (9th Cir. 2000)).

23

24

25

1    The second prudential ripeness consideration is "the hardship to the parties of

2  withholding court consideration." *Stormans*, 586 F.3d at 1126 (internal citations

3  omitted). The hardship consideration is whether withholding the review would result in a

4  direct and immediate hardship entailing more than possible financial loss. *Id.* at 1126

5  (internal citations omitted). This hardship consideration "serves as a counterbalance to

6  any interest the judiciary has in delaying consideration of the case," and need not be

7  considered if the claims are fit for judicial review. *Oklevueha Native Am. Church of*

8  *Haw., Inc. v. Holder*, 676 F.3d 829, 838-39 (9th Cir. 2012) (internal citations omitted).

9    Plaintiff's complaint alleges that the Federal Defendants are demanding a

10  repayment of federal funds because plaintiff included unpaid Medicaid bed-days in their

11  Medicaid share calculations. Dkt. 1 at 9. Plaintiff states that the Federal Defendants

12  informed plaintiff that based on the federal CMS sub regulatory guidance, unpaid bed-

13  days should have been excluded. Dkt. 1 at 10-11. Plaintiff concedes in the complaint

14  that plaintiff included unpaid Medicaid bed-days in their Medicaid share calculations. *Id.*

15  at 10.

16    Here, plaintiff is seeking a determination of whether unpaid bed-days must be

17  excluded when calculating a hospital's Medicaid share. This claim is primarily legal

18  because it is requesting the interpretation of a federal statute and regulation.

19  Additionally, the claim does not seem to require a resolution of factual disputes,

20  because plaintiff concedes that it included unpaid bed-days when calculating the

21  hospital's Medicaid shares. Additionally, plaintiff alleges that the Federal Defendants

22  demand the plaintiff's compliance with sub regulatory guidance, and directly threaten

23  that if compliance does not happen, then the federal CMS will issue formal

24

25

1    disallowance. Dkt. 1 at 10. This threat of enforcement indicates that the sub regulatory

2    guidance is a definitive statement of the agency's position on the exclusion of unpaid

3    bed days. Based on the foregoing, in light of prudential considerations, plaintiff's claims

4    are ripe for judicial review.

5          The second consideration – hardship to the parties in withholding court

6    consideration – serves as a counterbalance when there are any interests in the court

7    delaying consideration of the case. *See, Oklevueha*, 676 F.3d at 838-39. Accordingly,

8    because plaintiff's claim is ripe for judicial review, the Court need not consider the

9    hardships that delaying determination of this matter would impose on the parties.

10          Accordingly, the Court should hold that prudential considerations support a

11    finding that plaintiff's claim is ripe for review.

12          **c.  Exhaustion of Remedies, 42 U.S.C. § 1316(e)**

13          In their motion, the Federal Defendants contend that plaintiff's complaint should

14    be dismissed because plaintiff has failed to exhaust the administrative remedies set

15    forth in 42 U.S.C. § 1316. For the reasons set forth below, the Court should find that 42

16    U.S.C. § 1316(e) does not preclude plaintiff's action.

17          A disallowance is the denial of federal funds for a narrow item or class of items

18    that do not impact the overall program or federal-state relationship. *See, Oregon Dep't*

19    *of Human Resources v. Department of Health & Human Services*, 727 F.2d 1411, 1414-

20    15 (9th Cir. 1983); *Massachusetts v. Departmental Grant Appeals Board*, 698 F.2d 22,

21    25-27 (1st Cir. 1983). A notice of disallowance is sent when the Secretary determines

22    that any item or class of item claimed by a participating state is not allowable and

23    should be denied. *See*, 42 U.S.C. § 1316(e)(1), 42 C.F.R. § 430.42.

24

25

1    42 U.S.C. § 1316(e)(1) states that whenever the Secretary issues a disallowance

2    of any items or class of items claimed under title XIX (42 U.S.C. § 1396), "the State

3    shall be entitled to and upon request shall receive a reconsideration of the

4    disallowance." Section 1316(e)(2)(A) permits States to appeal a disallowance or an

5    unfavorable reconsideration of a disallowance to the Departmental Appeals Board.

6    Further, pursuant to Section 1316(e)(2)(C), "a State may obtain judicial review of

7    a decision of the Board by filling an action in any United States District Court located

8    within the appealing State." However,

9    Such an action may only be filed –

10   (i)    if no motion for reconsideration was filed within the 60-day period
            specified in subparagraph (B), during such 60-day period; or
11   (ii)   if such a motion was filed within such period, during the 60-day period that
            begins on the date of the Board's decision on such motion.

12

13   42 U.S.C. § 1316(e)(C)(2).

14   Plaintiff's complaint alleges that the Hospital Defendants applied to receive

15   electronic health record incentives, the Federal Defendants reviewed the applications

16   and approved the applications. Dkt. 1 at ¶ 25. Plaintiff alleges that it accepted the

17   Federal Defendants' determination and distributed funds accordingly. *Id*. at ¶ 26. The

18   Office of Inspector General later conducted an audit of the approved payments,

19   concluding that plaintiff had overpaid the Defendant Hospitals and that plaintiff should

20   refund the overpayment to the Federal Defendants. Dkt. 1 at ¶ 28-29.

21   The Federal Defendants confirm that the Office of the Inspector General audited

22   the electronic health records incentive program and determined that the plaintiff had

23   made overpayment and claimed more federal funds than allowable. Dkt. 23 at 11. The

24

25

REPORT AND RECOMMENDATION - 18

Federal Defendants' motion also confirms that the Federal Defendants sent plaintiff a letter demanding a refund of the overpayment. *Id.* at 12.

A state must exhaust the remedies set forth in 42 U.S.C. § 1316(e) when the Secretary determines that "any item or class of items on account of which Federal financial participation is claimed" should be disallowed. Yet neither party is alleging that plaintiff's claims were ever formally disallowed when they were initially claimed.

The parties both allege that plaintiff received the funds from the Federal Defendants. Now the Federal Defendants, after initially approving the claims, seek to recover funds that have already been paid to plaintiff and distributed to participating hospitals. This is not an instance where the Secretary disallowed an item or class of items claimed by a state in the first instance as contemplated in 42 U.S.C. § 1316(e). Accordingly, the action underlying this litigation is not the type of disallowance requiring exhaustion under 42 U.S.C. § 1316 before judicial review.

For these reasons, the undersigned recommends that the Court should find that plaintiff's claims are not barred by 42 U.S.C. § 1316.

   d.  **Subject Matter Jurisdiction**

The Federal Defendants contend that the Court should dismiss plaintiff's complaint for lack of subject matter jurisdiction because plaintiff relies on the Declaratory Judgment Act as the basis for federal question jurisdiction. The Federal Defendants contend that the Declaratory Judgment Act does not create an independent basis for jurisdiction.

The Declaratory Judgement Act does not create a stand-alone cause of action; it creates a remedy in cases where there is an existing cause of action for which the Court

1  has jurisdiction – it is not an independent statutory basis for subject matter jurisdiction.

2  *Morongo Band of Mission Indians v. California State Bd. of Equalization*, 858 F.2d 1376,

3  1382-83 (9th Cir. 1988).

4      The Declaratory Judgment Act "permits a federal court in a case of actual

5  controversy within its jurisdiction to declare the rights and other legal relations of any

6  interested party seeking such declaration, whether or not further relief is or could be

7  sought*." Levin Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th

8  Cir. 1986) (citing 28 U.S.C. § 2201). The Declaratory Judgment Act was enacted to

9  allow an additional remedy to parties who are uncertain of their rights and desire an

10  early adjudication without having to wait until they are sued by an adverse party. *Id.*

11  *Allen v. Milas*, 896 F.3d 1094, 1099 (9th Cir. 2018) (citing *Medtronic, Inc. v. Mirowski*

12  *Family Ventures, LLC*, 571 U.S. 191 (2014)).

13      The Court should dismiss this case because there is no cause of action for which

14  the Court would have subject matter jurisdiction. Plaintiff seeks relief pursuant to the

15  Declaratory Judgment Act and alleges that the Court has jurisdiction under 28 U.S.C. §

16  1331, yet their reasoning is not persuasive. Dkt. 1 at ¶ 40. Pursuant to Section 1331,

17  "[t]he district court shall have original jurisdiction of all civil action arising under the

18  Constitution, laws, or treaties of the United States." An action arises under federal law "if

19  that law creates the cause of action or if a substantial question of federal law is a

20  necessary element of plaintiff's cause of action." *Morongo*, 858 F.2d at 1383.

21      Here, plaintiff is asking for the Court to determine the rights and obligations of the

22  parties under the Administrative Procedures Act, based on the State's contention that

23  the federal agency's demand letter was a "final action" under 5 U.S.C. § 704. In order to

24

25

1    proceed with an action under the Administrative Procedures Act, the plaintiff must

2    establish that the agency action for which review is sought is a final agency action. 5

3    U.S.C. § 704; *Gill v. United States DOJ*, 913 F.3d 1179, 1184 (9th Cir. 2019), *Gallo*

4    *Cattle v. U.S. Dep't of Agric.,* 159 F.3d 1194, 1199 (9th Cir. 1988). The Court determines

5    the finality of an agency action based on the actual effects of the action, regardless of

6    the agency's characterization. *Gill*, 913 F.3d at 1184.

7        Whether agency action is final is evaluated in a pragmatic and flexible manner

8    focusing on the practical and legal effect of the agency action. *U.S. Army Corps of*

9    *Engineers v. Hawkes Co.,* __ U.S. __, 136 S.Ct. 1807, 1815 (2016); *Or. Nat. Desert*

10   *Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006)). This finality requirement

11   is designed to ensure that Courts do not intrude on agency ongoing deliberations. *San*

12   *Francisco Herring Ass'n v. United States DOI*, 946 F.3d 564, 578 (9th Cir. 2019).

13   However, requiring compliance with an agency action and the enforcement of agency

14   action indicate that the agency position is a final agency action within the meaning of

15   Section 704. *Id.* at 579.

16       Yet, the Administrative Procedures Act must be understood as creating a cause

17   of action only as it relates to the substantive law at issue in this case, i.e., calculation of

18   the Medicaid Share formula under 42 U.S.C. § 1396b(t) and 42 C.F.R. § 495.310(g). An

19   agency action is final when 1) the action marks the consummation of the agency's

20   decision-making process and 2) the action is one "by which rights or obligations have

21   been determined, or from which legal consequences will flow." *Bennet v. Spear,* 520

22   U.S. 154, 177-178 (2016); *Gallo Cattle*, 159 F.3d at 1199.

23

24

25

1    When a plaintiff asserts a declaratory judgment claim in defense to a threatened

2    or anticipated action, the court looks to the character of the threatened action.

3    *Medtronics*, 571 U.S. 197; *United Food & Commercial Workers Local Union Numbers*

4    *137, 324, 770, 899, 905, 1167, 1222, 1428 & 1442 v. Food Employers Council, Inc.*, 827

5    F.2d 519, 523 (9th Cir. 1987). "If the declaratory judgment defendant could have

6    brought a coercive action in federal court to enforce its rights, jurisdiction exists for

7    declaratory relief." *United Food & Commercial Workers*, 827 F.2d at 523 (quoting *Levin*

8    *Metals Corp. v. Parr-Richmond Terminal Co.*, 799 F.2d 1312, 1315 (9th Cir. 1986)).

9    Pursuant to 42 U.S.C. § 1396b(d)(2)(A) when the Secretary determines that an

10    overpayment was made to a state, if no adjustment is made, the Secretary will correct

11    the overpayment by reducing the overpayment amount from the payment for the quarter

12    following the determination of overpayment. When an overpayment is discovered, the

13    state is allowed a period of one year to recover or attempt to recover the overpayment

14    before the Secretary may make an adjustment to the federal payments. 42 U.S.C. §

15    1396b(d)(2)(C). At the end of the one-year period, the Secretary shall make the

16    adjustment to the federal payments, whether or not recovery was made – unless an

17    exception applies under 42 U.S.C. §1396b(d)(2)(D). *Id.*

18    If the Secretary estimates that there has been an overpayment based on a claim

19    that has been disallowed under 42 U.S.C. § 1316(d), and the state disputes the

20    disallowance:

21    the amount of the Federal payment in controversy shall, at the option of

22    the State, be retained by such State or recovered by the Secretary

23    pending a final determination with respect to such payment amount. If

24

25

such final determination is to the effect that any amount was properly

disallowed, and the State chose to retain payment of the amount in

controversy, the Secretary shall offset, from any subsequent payments

made to such State under this title, an amount equal to the proper amount

of the disallowance plus interest on such amount disallowed for the period

beginning on the date such amount was disallowed and ending on the

date of such final determination at a rate (determined by the Secretary)

based on the average of the bond equivalent of the weekly 90-day

treasury bill auction rates during such period.

42 U.S.C. § 1396b(d)(5).

Plaintiff brings this declaratory judgment in defense to the Federal Defendants'
demand letter, which contains threats of an anticipated disallowance pursuant to 42
U.S.C. § 1396b. The adverse action that plaintiff anticipates is an administrative action.
Pursuant to 42 U.S.C. § 1396b, the Federal Defendants may either allow plaintiff a one-
year period to recover the alleged overpayment or issue a disallowance of the funds.

The plaintiff asserts that the State HCA is currently taking action to recover the
alleged overpayment.  Dkt. 1, complaint, at 10, ¶ ¶ 29, 31. This shows the plaintiff has
taken the steps to comply with the one-year time period to recover the alleged
overpayment. And, the Federal Defendants have threatened a disallowance; if the
disallowance is eventually issued and then becomes "final agency action" under the
APA, the plaintiff may challenge the decision to the Department Appeals Board as set
forth in 42 U.S.C. § 1316. Once the Department Appeals Board makes a final

1    determination, the plaintiff may obtain judicial review of the decision by the Board by

2    filing an action in any United States District Court.

3           It does not appear that the Federal Defendants would be able to bring an action –

4    based solely on a demand letter as the case currently stands -- in federal court to

5    recover the alleged overpayment. Instead, the Federal Defendants' remedy is to

6    proceed with a formal disallowance and then the plaintiff would have the opportunity to

7    challenge the determination through statutory administrative procedures under the APA

8    and 42 U.S.C. § 1316.

9           Because plaintiff's claims are raised in defense to an anticipated action, the

10   character of the anticipated action determines whether the Court has subject matter

11   jurisdiction. Although the anticipated action is based on federal statutes and regulations,

12   the anticipated action is administrative, and the administrative agency has only issued a

13   demand letter at this point in time; formal procedures of disallowance have not yet

14   happened. This distinguishes the instant case from the situation in *San Francisco*

15   *Herring Ass'n v. United States DOI*, 946 F.3d 564, 578 (9th Cir. 2019). In that case, the

16   Department of the Interior had taken the step of enforcing its notices against the

17   plaintiff, an association of commercial fishing businesses. In this case, the federal CMS

18   has not taken this step. Also, the fishing businesses in the *San Francisco Herring Ass'n*

19   *v. United States DOI*, case would be subject to significant civil or criminal penalties if

20   they violated the notices that were being enforced by the federal agency. The plaintiff

21   has not identified a threat of civil or criminal penalties against the State HCA as the

22   instant case currently stands.

23

24

25

Accordingly, the Court should hold that it does not have subject matter jurisdiction over this case as to any of the claims against any of the defendants. The Hospital Defendants requested relief (Dkt 32, and Dkt. 42) is expressly limited and contingent on the Court granting the Federal Defendants' motion to dismiss. Accordingly, because the undersigned recommends that the Court GRANT the Federal Defendants' motion, the Hospital Defendants' request for dismissal should be granted as well.

### e. **Sovereign Immunity**

The Federal Defendants also contend that plaintiff's action is barred because plaintiff's complaint fails to identify a waiver of sovereign immunity. This would be an alternative basis for the Court's holding. The undersigned recommends that the Court should find that plaintiff's claims are not barred by sovereign immunity.

The United States, as a sovereign, may not be sued without its consent, and the terms of its consent define the court's jurisdiction. *United States v. Dalm*, 494 U.S. 596, 608 (1990). This immunity extends to suits against agents or officers of United States in their official capacities as well as federal agencies. *Hutchinson v, United States*, 677 F.2d 1322, 1327 (9th Cir. 1982), *Blackmar v. Guerre*, 342 U.S. 512, 515-16 (1952). Where the United States has not consented to a suit or waived sovereign immunity, the Court must dismiss the action because the existence of such consent is a prerequisite for jurisdiction. *McGuire v. United States*, 550 F.3d 903, 910 (9th Cir. 2008). The plaintiff must satisfy "the burden of establishing that its action falls within an unequivocally expressed waiver of sovereign immunity by Congress." *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 (9th Cir. 2007).

1    Here, plaintiff is bringing this suit against the Centers for Medicare and Medicaid

2    Services – a federal agency, and against Alex Azar and Seema Verma in their official

3    capacities. Dkt. 1. Accordingly, plaintiff bears the burden of establishing an

4    unequivocally expressed waiver of sovereign immunity to maintain this action.

5    Plaintiff contends that the complaint sufficiently pleads an unequivocally

6    expressed waiver of sovereign immunity by seeking relief under the Administrative

7    Procedures Act. Dkt. 31. The Administrative Procedures Act provides a waiver of

8    sovereign immunity in cases "'seeking relief other than money damages' for wrongs

9    committed by agencies, their officers, and their employees." *Navajo Nation v.*

10   *Department of the Interior*, 876 F.3d 1144, 1168 (9th Cir. 2017).

11   The Ninth Circuit has explained that when Congress enacted 5 U.S.C. § 702, it

12   enacted an "unqualified" waiver of sovereign immunity in "all actions seeking relief from

13   official misconduct except for money damages." *Nation*, 876 F.3d at 1171-72 (explaining

14   the seemingly contradicting positions set forth in *The Presbyterian Church (U.S.A.) v.*

15   *United States*, 870 F.3d 518 (9th Cir. 1989) and *Gallo Cattle Co. v. U.S. Dep't of Agric.*,

16   159 F.3d 1194 (9th Cir. 1998)). The Ninth Circuit, in *Nation,* further explained that

17   Section 702 creates a broad waiver of sovereign immunity for all causes of actions

18   seeking prospective relief for official misconduct rather than monetary damages. 876

19   F.3d at 1172 ("both the statutory language and its history counsel a broad waiver of

20   "any" and "all" immunity for non-monetary claims."). The waiver of immunity created by

21   Section 702 is "nestling a broad waiver of immunity" that covers all non-monetary

22   causes of action under the Administrative Procedures Act -- even where the underlying

23   federal statute, upon which the APA is activated, does not include a cause of action for

24

25

1  judicial review. *Navajo Nation,* 876 F.3d at 1168; *see Lexmark Intern., Inc. v. Static*

2  *Control Components, Inc.,* 572 U.S. 118, 130 (2014).

3      Based on the foregoing, the undersigned recommends that the Court find that

4  plaintiff has sufficiently pled a waiver of sovereign immunity. As was discuss in *Nation*,

5  Section 702 provides a broad waiver of qualified immunity for claims seeking non-

6  monetary relief for official misconduct. Here, plaintiff is seeking only declaratory relief,

7  for the conduct of federal officials and a federal agency.

8      Accordingly, under the Ninth Circuit's reading of Section 702 in *Nation,* the Court

9  should find that Section 702 provides an unequivocal waiver of sovereign immunity for

10  plaintiff's claims.

11                         III.    <u>CONCLUSION</u>

12      Based on the foregoing, the undersigned recommends that the Court GRANT the

13  Federal Defendants' motion to dismiss (Dkt. 23), because there is no subject matter

14  jurisdiction. As the Court lacks subject matter jurisdiction, the Hospital Defendants'

15  request for dismissal should also be granted (Dkt. 32). The Court's holding would be a

16  dismissal without prejudice, under FRCP 12(b)(1) based on lack of subject matter

17  jurisdiction. The Court need not consider the merits of whether the plaintiff has stated a

18  claim under FRCP 12(b)(6), because there is no subject matter jurisdiction. And this

19  case is not appropriate for leave to amend because it does not appear that the lack of

20  subject matter jurisdiction under these circumstances would or could potentially be

21  cured by amending the complaint.

22      The parties have **fourteen (14) days** from service of this Report and

23  Recommendation to file written objections thereto. 28 U.S.C. § 636(b)(1); FRCP 6;

24

25

REPORT AND RECOMMENDATION - 27

1  FRCP 72(b)(2). Failure to file objections will result in a waiver of those objections for

2  purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). If objections are filed, the

3  parties shall have **fourteen (14) days** from the service of the objections to file a

4  response. FRCP 72(b)(2). Accommodating this time limitation, this matter shall be set

5  for consideration on August 14, 2020, as noted in the caption.

6      Dated this 27th day of July, 2020.

7

8

9

10  Theresa L. Fricke
    United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORT AND RECOMMENDATION - 28